## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

G&G CLOSED CIRCUIT EVENTS, LLC,      *
     *
    Plaintiff,      *
     *      Case No. 8:23-cv-02820-PX
       v.      *
     *
SKY HIGH SPORTS & ENTERTAINMENT,     
LLC, *et al.*,      *
     *
    Defendants.      *
     *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OPINION

Currently pending is a Motion for Default Judgment filed by Plaintiff G&G Closed Circuit Events, LLC ("G&G") against Defendants Sky High Sports & Entertainment, LLC, and ("Sky High") and Rodney Chambers (collectively "Defendants"). ECF No. 14. Defendants have not responded to the Complaint or this Motion, and the time for doing so has passed. *See* Loc. R. 105.2.a. No hearing is necessary. *See* Loc. R. 105.6. For the following reasons, the Court grants default judgment as to Sky High as to Count I, denies the motion as to Chambers, and dismisses Count II for both Defendants.

I.      **Background**

G&G licenses and distributes televised sporting events to bars, restaurants, and other commercial establishments throughout the United States. ECF No. 1 ¶ 16. It had exclusive nationwide commercial distribution (closed-circuit) rights to the *Gervonta Davis v. Ryan Garcia Championship Fight Program* which aired on Saturday, April 22, 2023 ("the Program"). *Id.* ¶ 15. Sky High broadcasted the Program at its commercial establishment, known as "Party HQ,"

without first obtaining a license or other permission from G&G. *Id.* ¶¶ 6 & 8. On the night of April 22, 2023, G&G's private investigator observed the Program being displayed on approximately 20 televisions throughout the establishment while upwards of 350 patrons were present. ECF No. 1-3 at 2–3. Sky High charged a $10 per person cover that night. *Id.* The investigator approximated that Party HQ could hold about 650 people. *Id.* G&G's Rate Card provides that the contract fee for an establishment of that size would be at least $3,700. ECF No. 14-6.

Chambers is the owner of Sky High and is the sole licensee named on the establishment's Alcoholic Beverages Retail License issued by Prince George's County, Maryland. ECF No. 1 ¶ 6–7. G&G avers, with no supporting facts, that Chambers "directed" non-specific "employees" to "intercept and broadcast" the Program. *Id.* ¶ 10. The Complaint further avers that since Chambers was named on the Alcoholic Beverages Retail License, he had the "obligation to supervise the activities of Sky High," to include the "unlawful interception of Plaintiff's Program." *Id.* ¶ 8. The Complaint is otherwise silent as to Chambers' particular duties and responsibilities generally or on the night of April 22, 2023. *Id.* G&G contends that all Defendants violated the Communications Act of 1934, as amended, 47 U.S.C. § 605 *et seq.* ("Communications Act") (Count I); and the Cable and Television Consumer Protection and Competition Act of 1992, as amended, 47 U.S.C. § 553 *et seq.* ("Cable Act") (Count II).

G&G properly served Defendants on October 29, 2023. ECF Nos. 7 & 8. Thereafter, Defendants made no effort to participate in this litigation. The Clerk of Court entered a default order on November 22, 2023, pursuant to Federal Rule of Civil Procedure 55(a), and notified the Defendants by mail of the default. ECF Nos. 12 & 13. On April 16, 2024, G&G filed this

Motion for Default Judgment as to all Defendants.  ECF No. 14.  On November 7, 2024, G&G filed an amended affidavit pertaining to attorneys' fees and costs.  ECF No. 15.

## II.    Standard of Review

Federal Rule of Civil Procedure 55(a) provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).  Thereafter, the Court may enter default judgment at the plaintiff's request and with notice to the defaulting party.  Fed. R. Civ. P. 55(b)(2).  While the Fourth Circuit maintains a "strong policy that cases be decided on the merits," *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993), default judgment may be appropriate where a party is unresponsive.  *See S.E.C. v. Lawbaugh,* 359 F. Supp. 2d 418, 421 (D. Md. 2005).

When considering a motion for default judgment, the Court accepts as true all well-pleaded factual allegations, other than those pertaining to damages.  *See id*. at 422; *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied.").  To determine whether the allegations are well-pleaded, the Court applies the standards announced in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  *See, e.g.*, *Baltimore Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 544 (D. Md. 2011).  Where a complaint offers only "labels and conclusions" or "naked assertion[s] devoid of further factual enhancement," the Court will not enter default judgment.  *Id*. at 545 ("The record lacks any specific allegations of fact that 'show' why those conclusions are warranted.").

If the complaint establishes liability, the Court next turns to damages.  Damages are circumscribed by that which is requested in the complaint.  *See* Fed. R. Civ. P. 54(c) ("A default

judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."). The Court may either conduct an evidentiary hearing or accept affidavits and other documentary evidence into the record to determine what damages, if any, are warranted. *See Monge v. Portofino Ristorante*, 751 F. Supp. 2d 789, 794–95 (D. Md. 2010).

## III.    Analysis

### A.    Liability

A plaintiff may not recover under both Section 553 of the Cable Act and Section 605 of the Communications Act. *See J & J Sports Prods., Inc. v. Royster*, No. RWT-11-1597, 2014 WL 992779, at *2 (D. Md. Mar. 13, 2014). Recognizing this, G&G seeks to recover damages under the Communications Act alone and thus the Court will confine its liability analysis to Count I. ECF No. 14-3 at 6. Section 605 of the Communications Act provides that "[n]o person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person." 47 U.S.C. § 605(a). This provision covers "the unauthorized interception or receipt of 'digital satellite television transmissions'" such as the Program. *J & J Sports Prods., Inc. v. Beer 4 U, Inc.*, No. TDC-18-2602, 2019 WL 5864499, at *3 (D. Md. Nov. 8, 2019) (quoting *J & J Sports Prods., Inc. v. MayrealII, LLC*, 849 F. Supp. 2d 586, 588 n.3 (D. Md. 2012)). To establish liability as to a corporate defendant, G&G must show that "it had the exclusive commercial distribution rights" to the Program, and that Sky High exhibited the Program "without authorization." *Beer 4 U*, 2019 WL 5864499, at *3–4.

Taking the Complaint facts as true and most favorably to Defendants, Sky High violated the Communications Act because it broadcast the Program at Party HQ without a proper license from G&G. *See G&G Closed Cir. Events, LLC v. Blow Fish House, Inc.*, Civ. No. 8:23-00652-

PX, 2023 WL 7016350, at *2–3 (D. Md. Oct. 25, 2023) (holding a corporate defendant liable for the unauthorized exhibition of the broadcast of a boxing match to patrons at its commercial establishment). Thus, the Court grants default judgment against Sky High as to Count I.

The same cannot be said for Chambers. Certainly, vicarious liability may be established if G&G shows that the Chambers in fact maintained both a "right and ability to supervise that coalesce[d] with an obvious and direct financial interest in the exploitation of copyrighted materials." *Beer 4 U*, 2019 WL 5864499, at *4 (quoting *Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc*., 118 F.3d 955, 971 (2d Cir. 1997) (citation omitted)). Accordingly, some facts must demonstrate that Chambers had the (1) "'right and ability to supervise the violative activity,'" and (2) "a direct financial interest in the violation, i.e., financial benefits, even if not proportional or precisely calculable, that directly flow from the violative activity.'" *Id.* (quoting *J & J Sports Prods., Inc. v. Ramsey*, 757 F. App'x 93, 95–96 (3d Cir. 2018) (collecting cases)).

The Complaint parrots the legal standard of vicarious liability and avers generally that Chambers must be held to account. ECF No. 1. But G&G pleads no *facts* as to Chambers's supposed right to supervise the violative activity or any detail about his financial interest in the wrongful broadcast. Mere conclusory averments, devoid of any facts necessary to support the claim, will not suffice. *See Baltimore Line Handling Co.*, 771 F. Supp. 2d at 543 ("An allegation made 'on information and belief' does 'not serve as a reliable foundation upon which to predicate a final judgment.'") (quoting *Oceanic Trading Corp. v. Vessel Diana*, 423 F.2d 1, 4–5 (2d Cir. 1970)). The Motion for Default Judgment is thus denied as to Chambers and the Complaint is dismissed as to him.

The Court next turns to damages.

B.    **Damages**

G&G seeks statutory damages under the Communications Act, which permits a court to impose "a sum of not less than $1,000 or more than $10,000, as the court considers just," for each violation. 47 U.S.C. § 605(e)(3)(C)(i)(II). The Court uses the licensing fee that G&G would have otherwise obtained from Sky High as a benchmark for assessing statutory damages. S*ee, e.g.*, *Blow Fish House*, 2023 WL 7016350, at *3 (collecting cases); *Joe Hand Promotions, Inc. v. Aguilar*, Civ. No. TDC-19-0458, 2019 WL 4071776, at *3 (D. Md. Aug. 29, 2019). Here, that fee would be at least $3,700. ECF No. 14-6; ECF No. 1-3. Thus, G&G has demonstrated that $3,700 in statutory damages as a rough approximation for the harm the unlicensed broadcast visited upon the plaintiff. *See J & J Sports Prods., Inc. v. Plaza Del Alamo, Inc.*, No. TDC-15-0173, 2016 WL 153037, at *3 (D. Md. Jan. 12, 2016).

G&G also seeks $22,200 in enhanced damages. ECF No. 14-3 at 9. Enhanced damages may be awarded up to $100,000 against a defendant who violates the statute "willfully and for purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii). Several factors guide the propriety of awarding enhanced damages, to include "(1) evidence of willfulness; (2) repeated violations over an extended period of time; (3) substantial unlawful monetary gains; (4) advertising the broadcast; and (5) charging an admission fee or charging premiums for food and drinks." *J & J Sports Prods., Inc. v. Quattrocche*, No. WMN-09-3420, 2010 WL 2302353, at *2 (D. Md. June 7, 2010).

Applying those factors, the Court awards enhanced damages, albeit less than G&G has requested. As to willfulness, the allegations are thin, limited solely to the obvious proposition that Sky High knew that it was broadcasting the Program without a proper license. ECF No. 1. But nothing suggests that Sky High repeatedly violated the Communications Act over an

extended period or routinely promoted or advertised its unlawful broadcast. That said, Sky High did impose a modest cover charge of $10 per person, ECF No. 1-3, which in the Court's view, reflects Sky High's intent to capitalize financially on the unauthorized broadcast. Sky High also chose not to participate in this litigation, reflecting its willful evasion of responsibility once discovered. On this record, the Court finds proper enhanced damages of $9,000. *See G&G Closed Cir. Events, LLC v. Blow Fish House, Inc.*, No. 8:23-0652-PX, 2023 WL 7016350, at *4 (D. Md. Oct. 25, 2023); *Joe Hand Promotions, Inc. v. Aguilar*, No. TDC-19-0458, 2019 WL 4071776, at *3–4 (D. Md. Aug. 29, 2019), *report and recommendation adopted*, No. TDC-19-0458, 2019 WL 5588857 (D. Md. Sept. 20, 2019).

### C.    Attorneys' Fees and Costs

Finally, G&G seeks reasonable attorney's fees and costs for pursuing the case. *See* 47 U.S.C. § 605 (e)(3)(B)(iii). Counsel specifically requests $3,070 in attorneys' fees and $1,262 in costs. ECF No. 15. To calculate attorney's fees, the Court uses the lodestar method, multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *See Brodziak v. Runyon*, 145 F.3d 194, 196 (4th Cir. 1998). The two attorneys who worked on the matter, Richard and Ryan Kind, bill at an hourly rate that comports with this Court's Local Rules, and thus is presumptively reasonable. ECF No. 15; *see* Loc. R, App. B (3).

But as to the number of hours billed, the Court finds them unreasonably high for two reasons. First, Counsel seeks reimbursement for performing ministerial and clerical tasks not compensable at attorney rates. *See* Loc. R, App. B (2) ("Guidelines Regarding Compensable and Non-Compensable Time"). "Although certain types of work may fall into a gray area between legal and secretarial work, other types are clearly administrative or secretarial. The latter may not be awarded as attorneys' fees." *Kabore v. Anchor Staffing, Inc*., No. CIV. L-10-3204, 2012

WL 5077636, at *4 (D. Md. Oct. 17, 2012).  According to the amended fee petition and affidavit (ECF No. 15), Richard Kind—billing at $350 per hour—seeks reimbursement for scanning documents, opening a new E-file case, printing summonses, paying the process server, and filing proofs of service.  ECF No. 15 at 4.  None require the skills of a seasoned attorney with over 40 years' experience.  Accordingly, the Court will reduce the requested fee by $805 for Mr. Kind's time spent performing obviously clerical work.[1]

Second, and equally problematic, the Court cannot comfortably rely on Counsel's representations regarding the number of hours expended to litigate the case.  In the past several years, Counsel for G&G has filed over 200 similar license-fee matters in this District.  *See generally,* Attorney/Judge Cases Report for Richard M. Kind, Case Management/Electronic Case Files, https://mdd-ecf.sso.dcn/cgi-bin/AtyJudRpt.pl?146725004762004-L_1_2-1 (under "Attorney Last Name," enter Kind, and select Kind, Richard M (last visited Feb. 19, 2025)).  For each case, Counsel has crafted nearly identical complaints, changing only the names and addresses of the defendants, the name and date of the licensed program, and the particulars of the broadcast.  *See, e.g.*, *J&J Sports Prods., Inc. v. El Tapatio, Inc.*, No. CV TDC-18-1005, 2019 WL 1222737 (D. Md. Feb. 5, 2019); *G&G Closed Cir. Events, LLC v. Blow Fish House, Inc.*, No. 8:23-CV-0652-PX, 2023 WL 7016350 (D. Md. Oct. 25, 2023).  Because the Complaint language is boilerplate, the effort to prepare and draft a new complaint would be minimal.  And yet, Counsel seeks reimbursement for 4.2 hours, at $350 per hour, to prepare the Complaint alone.  ECF No. 15.

---

[1] The Court deducts billed hours as follows: $350 for typing names, dates, and addresses into the complaint, $70 for scanning and copying documents, $140 for opening a new E-file and filing documents; $105 for printing summonses and making copies, $140 for time spent paying the process server and filing proofs of service.  ECF No. 15 at 4.

Moreover, the tasks associated with the 4.2 hours raise further suspicion when compared with other affidavits submitted by the same attorneys. As reflected in the amended fee petition and affidavit, Counsel included six separate entries with detailed descriptions of tasks related to drafting the Complaint, along with the per-task time described in tenths of an hour. ECF No. 14-5 at 4–5. To draft another boilerplate complaint in a separate license-fee case, Counsel submitted the identical six tasks with identical descriptions and time increments. *Compare* Amended Affidavit & Certification of Attorney's Fees & Costs at 4, *G&G Closed Cir. Events, LLC v. Great Food Choices II, LLC, et al.*, No. 1:23-cv-02860-SAG (D. Md. Nov. 7, 2024), ECF No. 22, *with* Amended Affidavit & Certification of Attorney's Fees & Costs at 4, *G&G Closed Cir. Events, LLC v. Sky High Sports & Entertainment, LLC, et al.*, No. 8:23-cv-02820-PX (D. Md. Nov. 7, 2024), ECF No. 15. While the cases are similar in many respects, the Court finds it hard to believe that drafting the complaints for each case deviated not at all in necessary time or tasks. Accordingly, the Court concludes the requested attorneys' fees are excessive and will reduce the award to $1,700.

G&G lastly seeks reimbursement for the $402 filing fee, $735 for an investigator fee, and $125 for costs related to service of process. ECF No. 15 at 3. The requests are well supported and G&G will be awarded a total of $1,262 in costs associated with litigating this case.

## IV.    Conclusion

The Court grants Plaintiff G&G Sports Entertainment, LLC's Motion for Default Judgment against Defendant Sky High Sports, LLC as to Count I, denies the motion as to Defendant Rodney Chambers, and dismisses Count II as to both Defendants. ECF No. 14. The Court awards $12,700 in damages, $1,700 in attorneys' fees, and $1,262 in costs against Sky High. A separate Order follows.

9

Dated:  February 20, 2025                                          _____/s/_____
                                                                  Paula Xinis
                                                                  United States District Judge